PEOPLE *v.* DE LA MATER.

1. CONSTITUTIONAL LAW—CRIMINAL LAW—SEARCH WARRANTS—DISCRETION OF MAGISTRATE TO DETERMINE PROBABLE CAUSE—STATUTES—MANDATORY PROVISIONS.

Section 25, Act No. 53, Pub. Acts 1919, amending Act No. 338, Pub. Acts 1917, providing that if any person makes a sworn complaint or affidavit before any magistrate authorized to issue warrants in criminal cases that he has reason to believe that any intoxicating liquors are being manufactured, possessed, etc., or kept for the purpose of

being sold, etc., such magistrate "shall immediately issue his warrant" to search the premises described, and if such liquors are there found, to seize the same, is unconstitutional in that it makes the issuance of the warrant mandatory and takes away the right of the magistrate to determine the question of probable cause given him by the State Constitution under article 2, § 10.

2. INTOXICATING LIQUORS—CRIMINAL LAW—DRUGGISTS—QUASHING INFORMATION—VOID SEARCH WARRANT—EVIDENCE—SUFFICIENCY. On error to review, under Act No. 159, Pub. Acts 1917, the granting of a motion to quash an information alleging violation of the liquor law by a druggist, the contention of the prosecution that there was sufficient legal evidence, aside from that procured by a void search warrant, to hold defendant for trial, cannot be sustained, such contention being based on the discovery by the inspectors of 4½ pints of Kentucky Maiden whisky in the prescription case of defendant before he knew that they had a search warrant, where it may be assumed that the inspectors would probably not have been there except for said search warrant, and in view of the fact that one of the inspectors certified in his return that by virtue of the warrant he found 4½ pints of Kentucky Maiden whisky.

Error to superior court of Grand Rapids; Dunham (Major L.), J. Submitted October 14, 1920. (Docket No. 109.) Decided March 30, 1921.

Edgar D. De La Mater was bound over to the superior court for an alleged violation of the liquor law. The information was quashed on motion of defendant, and the liquor seized ordered returned. To review this judgment under Act No. 159, Pub. Acts 1917, the people bring error. Affirmed.

*Alex. J. Groesbeck,* Attorney General, *James A. Greene,* Assistant Attorney General, and *Cornelius J. Hoffius,* Prosecuting Attorney (*Fred P. Geib,* of counsel), for the people.

*Rodgers & Rodgers,* for appellee.

BIRD, J. Defendant, a resident of Grand Rapids, was apprehended on a warrant for the violation of the liquor law. He was held for trial in the superior court by the police court. Upon motion the information and proceedings were quashed by the superior court, and the case is here for review on writ of error at the instance of the prosecutor, under the provisions of Act No. 159 of the Public Acts of 1917.

It appears that defendant is, and has been, for several years, engaged in operating a drug store in the city of Grand Rapids, and as such druggist had a permit to sell intoxicating liquors up to May 1, 1919. After that date the food and drug department refused to renew his permit, which left him with a stock of liquors on hand. While negotiating for a renewal of his permit, and on December 30, 1919, George M. Bradley, one of the inspectors of the food and drug department, made an affidavit for a search warrant to search defendant's premises, and it was issued by the police court. Upon a search of defendant's place of business and storage house a quantity of various kinds of intoxicating liquors was found and seized. About three weeks thereafter defendant was arrested and taken before the police court. An examination was had and defendant was held for trial. Subsequently an information was filed in the superior court, following the charge in the complaint and warrant, charging him with running a drug store where liquors were stored and sold without having a permit to do so, and also with having intoxicating liquors in his possession contrary to the provisions of Act No. 338 of the Public Acts of 1917, as amended (Act No. 53, Pub. Acts 1919). Defendant moved the court for an order quashing the information and for his discharge, assigning several reasons therefor. The trial court granted the motion, it being the opinion of the court that section 25 of said act was in conflict with both the

Federal and State Constitutions. It was also the opinion of the court that no probable cause was shown for the issuance of the search warrant. Accordingly, an order was granted quashing the information; suppressing all evidence obtained by virtue of the search warrant and discharging the defendant from custody, with the further order that the liquors so seized be returned to him.

The assignments of error raise several questions, two of which demand our attention:

(1) Was the superior court in error in holding that section 25 was in conflict with section 10, article 2, of our Constitution?

(2) Was there sufficient legal evidence, aside from that procured by the search warrant, to hold defendant for trial?

1. The section of the statute which is questioned provides that:

"SEC. 25. If any person makes a sworn complaint or affidavit before any magistrate authorized to issue warrants in criminal cases, that he has reason to believe and does believe that any intoxicating liquors are being manufactured, possessed, sold, furnished, given away, or kept for the purpose of being sold, furnished, given away or possessed, contrary to law, or that any such liquors are stored, temporarily or otherwise, in any depot, freight house, express office, or in any other building or place with the apparent intention of being delivered for the purpose of being sold, furnished or given away contrary to the provisions of this act, such magistrate shall immediately issue his warrant to any officer whom the complainant may designate, having power to serve criminal process, commanding him to search the premises described and designated in such complaint and warrant, and if such liquors are there found, to seize the same, together with the vessels in which they are contained, and all the implements and furniture used and kept for such illegal manufacturing, importing, selling, furnishing, giving away, possessing, or storing of such liquors, and them safely

keep and make immediate return on said warrant." * * *

The constitutional provision with which the statute is said to be in conflict is as follows:

"The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or thing shall issue without describing them, nor without probable cause, supported by oath or affirmation." Article 2, § 10.

The argument is made that this provision of the Constitution forbids the issuance of a search warrant except upon probable cause, supported by oath or affirmation, and that the question of probable cause is one to be determined by the magistrate who is requested to issue the warrant. It is insisted that section 25 takes away this right from the magistrate and transfers it to the complainant. The language employed in section 25 is persuasive that it was intended by the legislature that when an affidavit or complaint complying with the terms of the statute was presented to a magistrate he would be in duty bound to issue his warrant. There appears to be no room for an exercise of his judgment as to whether probable cause exists. The statute does not say that he *may* issue his warrant, but the wording is he "*shall* immediately issue his warrant." The use of the adverb "immediately" contributes much to the conclusion that the duty of the magistrate was intended to be mandatory. Taking the language in its plain ordinary meaning, together with the rule that when the word "shall" is used in a command to a public official, it excludes the idea of discretion (*In re Rourke,* 30 N. Y. Supp. 375), we think the command to issue the writ is mandatory and that the magistrate is without authority to determine the question of probable cause. It is quite evident that if a showing were made to this court that a sworn

application complying with the statute had been made and tendered to a justice of the peace, who refused to issue the warrant, we would compel him to do so by writ of mandamus, if no constitutional question were raised. If this be the proper construction, is the section in collision with the constitutional provision heretofore quoted?

The statutory provision which has existed in this State for many years, authorizing the issuance of search warrants, is as follows:

"When complaint shall be made on oath to any magistrate authorized to issue warrants in criminal cases, that personal property has been stolen or embezzled, or obtained by false tokens or pretenses, and that the complainant believes that it is concealed in any particular house or place, such magistrate, *if he be satisfied that there is reasonable cause for such belief,* shall issue a warrant to search for such property." 3 Comp. Laws 1915, § 15879.

Tiffany's Criminal Law (How. 4th Ed.), p. 355, in commenting on the issuance of search warrants, has the following to say:

"The facts and circumstances which induce the complainant's belief must be set forth, and those facts and circumstances must be sufficient to make it appear that there is probable cause for such belief and for making the search.

"And the magistrate must be satisfied and determine from the facts and circumstances set forth and sworn to, that there is reasonable cause for such belief."

Of course, it may be said, that this is legislation and may be changed by legislation, and this would be true if it were not a constitutional requirement. The case of *Hastings* v. *Haug*, 85 Mich. 92, determines that the question of probable cause is a constitutional question. It says:

"The Constitution and the statute both require that the complaint must be on oath, and that the magistrate must be satisfied that there is reasonable or probable cause."

The case of *Lippman* v. *People*, 175 Ill. 110 (51 N. E. 872), discusses a situation so nearly like the present one that we quote from it at length:

"Section 6 of article 2 of the constitution is as follows:

"'The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue without probable cause, supported by affidavit, particularly describing the place to be searched and the persons or things to be seized.'

"Section 4 of the act in question provides as follows:

"'In case the owner or owners of any cask, barrel, keg, bottle or box so marked, stamped and registered as aforesaid, shall, in person or by agent, make oath in writing, before any justice of the peace or police magistrate, that he has reason to believe, and does believe, that any manufacturer or bottler of ale, porter, lager beer, soda, mineral water or other beverage, or any other person is using, in any manner by this act declared to be unlawful, any of the casks, barrels, kegs, bottles or boxes, of such person or his principal, or that any junk dealer or dealer in casks, barrels, kegs, bottles or boxes, or any other dealer, manufacturer or bottler, has any such cask, barrel, keg, bottle or box secreted in, about or upon his, her or their premises, the said justice of the peace or police magistrate shall issue his search warrant and cause the premises designated to be searched,' etc.

"This section of our constitution is identical with the fourth amendment to the Constitution of the United States, except that it substitutes the word 'affidavit' for 'oath or affirmation.' It is a step beyond the Constitution of the United States, in requiring the evidence of probable cause to be made a permanent record in the form of an affidavit; otherwise, it is the same. It has been uniformly held, wherever the question has arisen under a statute or constitution containing such provision, that the oath or affirmation

must show probable cause arising from facts within the knowledge of affiant, and must exhibit the facts upon which the belief is based, and that his mere belief is not sufficient. *United States* v. *Turreaud*, 20 Fed. 621; *Johnston* v. *United States*, 30 C. C. A. 612, 87 Fed. 187. The constitutional provisions on this subject had their origin in the abuse of executive authority, and their design is to substitute judicial discretion for arbitrary power, so that the security of the citizen in his property shall not be at the mercy of individuals or officers. The general statute authorizing search warrants, contained in the criminal code, fully recognizes this rule by the requirement that the judge or justice of the peace shall be satisfied that there is reasonable cause for the belief of the affiant, before he shall issue his warrant. Wherever a statute requires probable cause, supported by oath or affirmation, the complaint must set up facts, and cannot rest on mere belief, which will not satisfy the requirement. *Blythe* v. *Tompkins*, 2 Abb. Prac. (N. Y.) 468; *People* v. *Heffron*, 53 Mich. 527; *Ex parte Dimmig*, 74 Cal. 164 (15 Pac. 619). A search warrant can only be granted after a showing made before a magistrate, under oath, that a crime has been committed; and the law, in requiring a showing of probable cause, supported by affidavit, intends that facts shall be stated which shall satisfy the magistrate that suspicion is well founded. The mere expression of opinion, under oath, is no ground for the warrant, except as the facts justify it. Cooley, Const. Lim. (4th Ed.) p. 372: 'The warrant is not allowed for the purpose of obtaining evidence of an intended crime; but only after lawful evidence of an offense actually committed.' *Id.* p. 374. The act now under consideration does not even require an affidavit that any offense has been committed, and an affidavit which fulfills its conditions belongs to a class universally condemned by every authority, when used to disturb a citizen in the security guaranteed him by the constitution. It requires nothing but the belief of the party making the affidavit; and, as he is not required to state any fact or satisfy the magistrate that there is reasonable ground for his belief, he may just as well swear by wholesale, according to the printed form, to 400 bot-

tles and 40 kegs, as to his affidavit to the facts of a particular case. The act attempts to transfer the judicial discretion, which the constitution intended should be exercised by the magistrate, from that officer to the party making the affidavit. The vesting of such discretion in the magistrate has been the main purpose of constitutional provisions of this character; while this act destroys the protection secured, and permits the affiant to pass upon the question of probable cause."

The prosecutor has cited the following cases in support of his position: *Lowrey* v. *Gridley*, 30 Conn. 450, 458; *Gray* v. *Kimball*, 42 Me. 299, 307; *State* v. *Miller*, 48 Me. 576, 581; *State* v. *Nowlan*, 64 Me. 532; *State* v. *McManus*, 65 Kan. 720 (70 Pac. 700); *In re Horgan*, 16 R. I. 542 (18 Atl. 279); *In re Fitzpatrick*, 16 R. I. 60 (11 Atl. 773); *Lincoln* v. *Smith*, 27 Vt. 328, 346, 356.

The Connecticut case cited appears to have some bearing on the question here at issue. While the warrant was upheld in that case the court does so by holding that the proceeding was in accord with the general practice which had been in force in that State for many years. In this State it is an innovation, the practice has always been opposed to what is now proposed in this statute. This fact, together with the direct statement in *Hastings* v. *Haug, supra,* that "the Constitution and statute both require that  *  *  *  the magistrate must be satisfied that there is reasonable or probable cause," renders the opinion in the Connecticut case of little value in this State. We do not think the other cases are sufficiently in point to discuss them.

Our conclusion is, that section 25 of the statute is in conflict with the Constitution, and for that reason is without force.

2. It is argued by the prosecutor that there was evidence introduced aside from that obtained by the

search warrant, which would sustain the information. This is based upon some proof that 4½ pints of Kentucky Maiden whisky were discovered in the prescription case before defendant knew that the inspectors had a search warrant. While this is true the fact remains, however, that the inspectors would probably not have been there except for the fact that they were in possession of a search warrant, and it is fair to assume that what they did was done in pursuance of it. Added to this fact is the return of Inspector Bradley, who certifies therein that by virtue of the warrant he found 4½ pints of Kentucky Maiden whisky in defendant's possession. In view of this, we can hardly say that any intoxicating liquors were discovered in defendant's place without the aid of the search warrant.

The other questions discussed by the trial court will need no consideration by us.

The judgment of the trial court is affirmed.

STEERE, C. J., and MOORE, FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred.

The late Justice BROOKE took no part in this decision.